IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| SHERRIE LYNN LITTRELL, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>DAVIS COUNTY, a Utah State body politic (DAVIS COUNTY SHERIFF'S OFFICE); CATYSE EASTON, an individual; and JOHN AND JANE DOES 1 THRU 10,<br><br>        Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 1:05cv30 |

      Plaintiff Sherrie Littrell filed this action under 42 U.S.C. § 1983. Ms. Littrell claims that her Fourth Amendment rights were violated by Deputy Catyse Easton and Deputy Easton's employer, Davis County. According to Ms. Littrell, she was subjected to excessive use of force by Deputy Easton and Davis County is liable for its failure to supervise and train Deputy Easton.

      Ms. Littrell has filed a motion for summary judgment on all her claims and the Defendants have filed a motion to dismiss based, in part, on the defense of qualified immunity. Because there are genuine factual disputes regarding the amount of force used by Deputy Easton to remove Ms. Littrell from the apartment, the court DENIES Ms. Littrell's motion for summary judgment and DENIES Defendants' motion to dismiss the § 1983 Claim against Deputy Easton. The court GRANTS Defendants' motion to dismiss Ms. Littrell's (1) § 1983 claim against Davis County because there is no municipal liability under § 1983 except in narrow circumstances and Ms. Littrell has failed to plead any facts to support her claim; and (2) state law claims because

the Utah Governmental Immunity Act provides a valid defense.  The Defendants' motion to strike portions of Ms. Littrell's affidavit is DENIED as moot.

## BACKGROUND FACTS[1]

On April 19, 2004, Deputy Easton was called to a 911 medical emergency at County Crossing Apartments where Ms. Littrell was the property manager.  When Deputy Easton arrived, the EMTs from the Clinton Fire Department were giving oxygen to a woman in one of the apartments.  While Deputy Easton was questioning the woman's husband about his wife's medical history, Ms. Littrell entered the apartment.  Deputy Easton asked her to leave but Ms. Littrell ignored her request and stepped around Deputy Easton to talk to the husband. Deputy Easton maintains that although she asked Ms. Littrell to leave a second and third time, Ms. Littrell refused.  Finally, Deputy Easton took Ms. Littrell's arm and removed her from the apartment.  Ms. Littrell and Deputy Easton give differing accounts of exactly how Deputy Easton removed Ms. Littrell from the apartment.

## STANDARD OF REVIEW

Because the Defendants have brought a motion to dismiss based, in part, on the defense of qualified immunity, and Ms. Littrell has brought a motion for summary judgment, different legal standards govern the court's review of the motions.

<u>Summary Judgment</u>

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[1]The factual background of this case is set forth at length in the written submissions of the parties.  The court will repeat only those facts necessary to explain its decision.

party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). Pursuant to 42 U.S.C. Section 1983, any person who "under the color of ... [law] ... subjects, or causes to be subjected, ... and [person] ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 was enacted to provide protections to those persons wronged by the misuse of governmental power. While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. See Wilson v. Stock, 52 F.3d 1547, 1552 (10th Cir. 1995). To state a claim for relief for a section 1983 action, a plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law. See American Mfr's Mut. Ins. Co. V. Sullivan, 526 U.S. 40, 49-50 (1999).

Motion to Dismiss

A court should grant a motion to dismiss when the complaint, viewed in the light most favorable to the plaintiff, fails to state a claim on which relief can be granted. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006) (all well-pleaded factual allegations of the complaint are accepted as true and viewed in the light most favorable to the nonmoving party), accord Dill v. City of Edmond, 155 F.3d 1193, 1201 (10th Cir. 1998). While well-pleaded factual allegations are accepted as true, the court makes its own determination on legal issues. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). "[D]ismissal under Rule 12(b)(6) 'is a

harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" Moore, 438 F.3d at 1039 (quoting Duran v. Carris, 238 F.3d 1268, 1270 (10th Cir.2001) (quotation and citation omitted)). Granting dismissal is only appropriate when "it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." Gas-A-Car, Inc. v. Am. Petrofina, Inc., 484 F.2d 1102, 1107 (10th Cir.1973).

## ANALYSIS

### I.     42 U.S.C. § 1983 Claim Against Deputy Easton[2]

Ms. Littrell claims that her Fourth Amendment rights were violated by Deputy Easton when she used excessive force in removing her from the apartment. Defendants maintain that they have immunity under the doctrine of qualified immunity.

The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to plaintiff's claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit has adopted a three-part test when analyzing a qualified immunity defense: (1) the court must consider if plaintiff's allegations establish a constitutional violation; (2) if plaintiff has alleged a constitutional violation, the court must determine whether the law was clearly established at the time the alleged violation occurred; and (3) even if the law was

---

[2]Although in Count I of her complaint Ms. Littrell alleges unlawful detention, unlawful seizure, false arrest, and excessive use of force it appears that the deciding question is whether Deputy Easton's actions violated the Fourth Amendment through use of excessive force.

clearly established, the Court must consider any extraordinary circumstances that prevented the public official from knowing his actions were unconstitutional. Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir.2006). Law is clearly established if "a reasonable official in defendant's situation would have understood that his conduct" violated plaintiff's constitutional rights. Moore v. Guthrie, 438 F.3d 1036, 1042 (10th Cir. 2006).

Ms. Littrell bears the burden to prove that her constitutional rights were violated and that the law giving rise to her claim was clearly established at the time the acts occurred. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The court must assess the reasonableness of the officer's actions in light of the law existing at the time fo the alleged violation and determine whether Ms. Littrell's legal rights were sufficiently clear that a reasonable officer would have known that her conduct violated the law. Id.

To support Ms. Littrell's claim that her Fourth Amendment rights were violated by Deputy Easton when she used excessive force in removing her from the apartment, Ms. Littrell must establish that a seizure occurred and that the seizure was objectively unreasonable. Brower v. County of Inyo, 489 U.S. 593, 599 (1989); Graham v. Connor, 490 U.S. 386, 394-95 (1989). Although the parties do not dispute most of the events that occurred on April 19, 2004, the parties do dispute the amount and type of force that was used by Deputy Easton to remove Ms. Littrell from the apartment.

Ms. Littrell supports her motion with her own affidavit and nothing else.[3] Defendants oppose the motion with an affidavit from Deputy Easton. Ms. Littrell's and Deputy Easton's affidavits create a genuine material dispute about the type and degree of force that was used, as

---

[3]Much of Ms. Littrell's affidavit is inadmissible due to hearsay, lack of foundation, no personal knowledge, and legal conclusions.

well as the situation out of which the force arose.

>The following is Ms. Littrell's description of the relevant events:

>>At approximately 11:30 hours, after Defendant Easton arrive to the scene of the 911 call, I stuck my head into the doorway attempting to offer my assistance. . . . Defendant Easton was instantly agitated at me and became aggressive with me in an unprofessional manner. I did not provoke her agitation in any way. At that time and place, Ms. Easton yelled at me to "get out of here!" At that time I turned to Wayne Daliva, my tenant, asking him if his wife was alright. At that time, Ms. Easton charged at me forcibly [and] removed [me] from the residence's handicap ramp. The officer, while standing face-to-face, inches apart from me, had a hold of my shoulders, removing me down the handicap ramp where I was informed by Easton that I was "trespassing." I denied that I was trespassing and identified myself as the property manager of the complex. This information incited the officer further into a fit of rage. She let go of my shoulders and in a twisting motion dug into my chest with both hands. Defendant Easton grabbed two hand-fulls of my chest, yelling at me demanding that I look upon her yelling, "Don't you see my badge! . . . Don't you see my gun!" as she, in a gesturing motion, looked down at her weapon, a holstered 9 mm. . . . [I was] fearful of Defendant Easton. . . . Thereafter, I hid in the neighbor's residence [for] 15 minutes.

>(Aff. of Sherrie Lynn Littrell ¶¶ 2-15 (emphasis added).)

>Deputy Easton has a different explanation:

>>The patient appeared to be in significant distress. I began speaking with the patient's husband to get . . . the patient's medical history . . . . During this time, we had left the door to the apartment open . . . . A woman, later identified as Sherrie Lynn Littrell, stepped inside the door and turned toward the patient in the living room, asking if she was alright. I stepped forward to the door and asked Ms. Littrell to wait outside until we had finished and told her that the family would talk to her afterwards. Ms. Littrell then moved around me and spoke to the patient's husband. I interrupted Ms. Littrell and once again, asked her to leave as I tried to close the door to the apartment. Ms. Littrell identified herself as the apartment manager and pushed on the door I was trying to close in an attempt to step further into the apartment. I grabbed Mrs. Littrell's arm and escorted her into the open hallway as I closed the patient's apartment door. . . . I raised my voice at Ms. Littrell and stated that she was no longer being asked to leave but being told to

>   leave by a police officer. There was a small wooden ramp leading out of the apartment and Ms. Littrell stumbled but maintained her footing on it as I was pushing her by the upper arm. . . . Ms. Littrell [then] went inside [the next-door apartment].

(Aff. of Catyse Easton ¶¶ 4-12 (emphasis added).)

In their opposition, the Defendants incorrectly contend that no fourth amendment seizure occurred. They say that "Deputy Easton was not attempting to restrain Plaintiff for the purpose of arrest or detention, and therefore, no seizure occurred which would come under Fourth Amendment scrutiny." (Defs.' Mem. Opp'n to Mot. for Summ. J. at 14.) A 'seizure' triggering the Fourth Amendment's protection occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." Graham, 490 U.S. at 395 n.10 (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). The case law does not limit Fourth Amendment seizures to situations involving a criminal suspect. "Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking . . . [as long as] the detention or taking itself [was] willful." Brower, 489 U.S. at 596.

The Supreme Court has recognized that claims against police for excessive force under the Fourth Amendment must be analyzed under a standard of "objective reasonableness." Graham, 490 U.S. at 388-89. The subjective beliefs of the officer are irrelevant to the court's consideration of a claim for excessive force. See Cortez v. McCauley, 428 F.3d 980, 989 n.7 (10th Cir. 2006). The Tenth Circuit has stated that "[t]he reasonableness of an officer's conduct must be assessed 'from the perspective of a reasonable officer on the scene,' recognizing the fact that the officer may be 'forced to make split-second judgments' under stressful and dangerous conditions.... The Fourth Amendment standard requires inquiry into the factual circumstances of every case... ." Holland v. Harrington, 268 F.3d 1179, 1188 (10th Cir. 2001).

Accepting Ms. Littrell's statements as true, the court finds that there was a sufficient "intentional acquisition of physical control" over Ms. Littrell and therefore a seizure occurred. See Brower, 489 U.S. at 596.

Because there was a seizure, the next inquiry is whether the force used was objectively reasonable. See Graham, 490 U.S. at 388-89. But as clearly shown by the widely differing accounts of the degree of force that was used, there are genuine issues of material fact in dispute that must be decided by the trier of fact.

Because the critical facts underpinning the Fourth Amendment excessive force claim are in dispute, the court denies Ms. Littrell's motion for summary judgment and Defendants' motion to dismiss the § 1983 claim against Deputy Easton.

## II.     § 1983 Claim Against Davis County

Ms. Littrell alleges that Davis County failed to properly train and supervise Deputy Easton by not effectively implementing or enforcing departmental policies or statutory law. A governmental entity "may be held liable under § 1983 only for its own constitutional or illegal policies and not for the tortious acts of its employees." Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998) (citing Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978)). "A plaintiff suing a county under section 1983 for the actions of one of its officers must demonstrate two elements: (1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1318 (10th Cir. 1998).

Ms. Littrell's allegations regarding Davis County's liability are very conclusory. She alleges in her complaint that:

> 49.     The failure of Davis County to apprize complainants, such as Littrell, of their investigation results, amount to a ratification,

> condonation, or approval of the individual Defendants' conduct.
>
> 50.    The failure of Davis County apprize others of investigation results amounts to a pattern establishing a custom or practice for which Davis County . . . should be held liable to Littrell for damages, including for her anxiety and emotional distress.

(Compl. ¶¶ 49-50.)  These allegations do not identify a policy or custom that would be a moving force behind the constitutional deprivation alleged in the Complaint.  And they do not allege that the County's failure to act was the result of deliberate indifference to the rights of the County's citizens.  See Graves, 450 F.3d at 1218 ("When the claim [for municipal liability under § 1983] is a failure to act, the plaintiff must demonstrate the municipality's inaction was the result of 'deliberate indifference' to the rights of its inhabitants.").  Because there is no municipal liability under § 1983 except in certain narrow circumstances and Ms. Littrell has failed to plead any facts to support her § 1983 claim against Davis County, Defendants' motion to dismiss is granted.

### III.    State Law Claims

Ms. Littrell has asserted state law claims of assault and battery and a claim against Davis County for negligent failure to supervise.  Ms. Littrell provides no analysis of these claims in neither her motion for summary judgment nor in opposing the Defendants motion to dismiss.

Defendants maintain that Ms. Littrell's state law causes of action for assault and battery are barred by the Utah Governmental Immunity Act (URIA).  Specifically, they contend that public employees are immune from claims of tortuous conduct committed in the course of employment unless the employee "acted or failed to act due to fraud or malice."  See Utah Code Ann. § 63-30-4(3)(b)(I) (2003);  Baker v. Angus, 910 P.2d 427, 432 n.4 (Utah Ct. App. 1996) (quoting 1993 version of URIA).  Even taking the facts in light most favorable to Ms. Littrell, there are no facts provided that rise to the level of fraud or malice.  At most, Deputy Easton lost

9

her temper. Because Ms. Littrell failed to plead any facts to support the claims and the URIA provides a valid defense to those claims, Defendants' motion to dismiss these claims is granted.

**V.      Defendants' Motion to Strike Portions of Sherrie Littrell Affidavit**

Even if the court considered all of Ms. Littrell's affidavit, the results of this order would be the same.

## ORDER

For the foregoing reasons, the Court DENIES Ms. Littrell's motion for summary judgment and GRANTS in part and DENIES in part Defendants' motion to dismiss.

1. The Court DENIES Ms. Littrell's Motion for Summary Judgment and Defendants' Motion to Dismiss regarding the § 1983 civil rights claim against Deputy Easton.

2. The Court GRANTS Defendants' Motion to Dismiss the § 1983 civil rights claim against Davis County and the state law claims against Deputy Easton and Davis County.

3. The Court DENIES as moot Defendants' Motion to Strike Portions of Sherrie Littrell's Affidavit.

SO ORDERED this 21st day of February, 2007.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge